GLADNEY, Judge.
General Contract Corporation instituted this suit July 13, 1954, on a chattel mortgage note executed by defendant as part payment for a 1953 Chevrolet automobile purchased at Springhill, Louisiana, from the Bowie County Motor Company of Tex-arkana, Arkansas. Seizure of the automobile was had under a writ of sequestration. Wigington filed a motion seeking dissolution of the writ, and answered admitting his signature to the note sued upon, but asserting in reconvention a demand for a rescission of the sale due to the failure , of vendor to furnish a certificate of title. In. proceedings that followed the motion to dissolve was referred to the merits. It does not appear to have been passed upon by the trial court which rendered judgment on the whole case in favor of plaintiff, as prayed for.
The principal issue is whether plaintiff can be considered a holder in due course, in which event the defenses must fail. The ruling complained of held General Contract Corporation to be a holder in due course.
The facts are precisely presented and not seriously at issue. When defendant purchased the Chevrolet automobile and executed the note herein sued upon, he delivered to the Bowie County Motor a certificate of title to his automobile and a small sum in cash for the down payment. The vendor, however, did not deliver to Wigington evidence of a valid title to the car purchased and thereafter despite many attempts to secure a certificate of title, from the Bowie County Motor Company, and plaintiff, it was not until July -2, 1954, that defendant received a certificate of title which, we might add, was issued by the Vehicle Commissioner of the State of Louisiana on data furnished him over the signature of James G. Freeman. During the trial it was admitted the purported signature of Freeman was not his signature and was written without authority. Freeman’s name, therefore, was forged and thus the title certificate dated July 2, 1954, was obtained fraudulently.
Testimony disclosed the defendant made repeated trips to Texarkana for the purpose of securing a certificate of title. On April 8, 1954, about seven months after Wigington bought the car, plaintiff wrote him as follows:
“Dear Mr. Wigington:
“Our field representative recently contacted you in regard to the February and March payments on your 1953 Chevrolet. He stated that you refused to make payments because you had not been able to register the automobile.
“We wish to advise that it is not our responsibility in seeing that an automobile is licensed and titled. That is up to the customer and the dealer. The dealer states that he is in the process of obtaining necessary papers for you to register the car. We wish to advise that unless we receive past due payments in ■ the total amount of $160.00, within seven days from the date of this letter that we are going to have Mr. Roy Fish oí Springhill, La., contact you in regard to' our balance.
“Therefore, if you desire to protect the equity that you now have in the automobile, please forward past due payments immediately. ‘ ...
“Yours very truly,
Fred Finch
Office Manager.”
. Defendant produced and filed in evidence certain writings relating to . the *150 ownership of the Subject automobile. Some of these were prepared for the purpose of influencing the issuance of a title certificate. It is interesting to note the obscure history of the “demonstrator” and misrepresentations made therein. The exhibits referred to consist of:
(1) A letter from the Motor Vehicle Division of the Department of Revenue of , Arkansas, showing that as of September 16, 1954, James G. Freeman of Texarkana, Arkansas, was the registered owner of the Chevrolet vehicle herein involved, having acquired the same on July '25, 1953, and that said vehicle was subject to a lien in favor of plaintiff. The letter also contains information that the same vehicle had been registered in the State of Mississippi in 1952: '
(2) The act of chattel mortgage and note herein sued upon, executed by defendant September 10, 1953, in. connection'with the sale by the Bowié Courity Motor Company;
(3) A bill of sale from' Lassiter Auto Sales of Murray, Kentucky, to Bowie County Motor Company, bearing date -of September 15, 1953, which bill of sale represents: “This car is dealer’s demonstrator and has been driven under Kentucky Dealer License No. 2134”;
(4) An act of sale and chattel mortgage of the car from the Bowie County Motor Company to B. A. Wigington, bearing date of November 24, 1953;
(5) A bill of sale executed November 24, 1953, by the Bowie County Motor Company evidencing a transfer to defendant of the vehicle containing the significant word “unregistered”;
(6) A bill of sale and chattel mortgage in favor of B. A. Wigington executed by the Standard Auto Company, dated February 25, 1954, covering the automobile herein purchased. Parenthetically, we may add that the evidence discloses the Standard Auto Company was located in Hope, Arkansas, and is and was under the same ownership as the Bowie"' County Motor Company; ' ■ '
(7)A bill of sale executed by the Standard Auto Company in favor of B. A. Wig-ington dated February 25, 1954, and representing, inter alia, “This car is a dealer’s-demonstrator and has never been titled in. any state, but has been driven under Arkansas dealer’s demonstrator tags”,, which representation was purportedly verified by B. Johnson for the Standard Auto-Company before a notary public.
Beverly Johnson, owner of Bowie County Motor Company and Standard Motor Company,, testified the subject vehicle was delivered to him for resale about four or five days prior to September 10, 1953, by General Contract Corporation and that1 plaintiff ■ had received the car back from-Freeman without any release from Freeman. With regard to the mortgage executed by Freeman, Johnson said it was not. actually canceled by ’General Contract Corporation until May 20, 1954.
■ The defense plaintiff is not a holder in-’ due course is predicated on its having knowledge that when Wigington purchased-the automobile the evidence of title was in.the name of James G. Freeman. Undoubt-' edly plaintiff had actual knowledge of these facts for it transferred the actual possession of the vehicle to the Bowie County.' Motor Company for resale.
Under the Negotiable Instruments Act,. LSA-R.S. 7:52, it is said:
“A holder in due course is a holder who has taken the instrument under' the following conditions:
“(1) That it is complete and regular-upon its face;
******
“(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
Counsel for plaintiff argues that General Contract Corporation had no notice-of'any infirmity in the instrument or defect of the title of the Bowie County Motor *151 ■Company iñ negotiating the paper that is the subject of this suit. IJnd.er' the section above quoted, a purchaser of a negotiable instrument is not a holder in due •course. until the transaction is complete. . -Certainly the sale to defendant .vyas not complete until he was invested with title to the automobile. When General Contract Corporation purchased defendant’s note the ■car was neither marketable nor merchantable. It is provided in LSA-R.S.. 32:706:
“On and after December 15, 1950, except as provided in R.S. 32:705 and 32:712, no person buying a vehicle from the owner thereof, whether such -owner be a dealer or otherwise, here.after shall acquire a marketable title ■in or to said vehicle until the purchaser shall have obtained a certificate of title to said vehicle.”
Wigington after futilely trying to ■secure a certificate of title and being unable -to secure a license in Louisiana because of his inability to secure evidence of title ■ceased making payments on the note and ■when he did, this suit was brought. We •should also state that even after plaintiff ■was furnished with the certificate of title ■from the Motor Vehicle Commissioner for the State of Louisiana, dated July 2, 1954, ■defendant did not have a feasible title since ■such certificate admittedly was obtained fraudulently upon the forged name of James G. Freeman. The evidence so presented is convincing that plaintiff cannot "be regarded as a holder in due course and its ownership of the note herein sued upon ■is subject to all the equities which have •accrued in favor of the defendant- from the ■sale of the -car. This case is remarkably similar to that of General Motors Acceptance Corporation v. Daigle, 1954, 225 La. 123, 72 So.2d 319, and is authority for the views herein expressed. In the cited case the automobile was described in the bill of sale and mortgage as a new demonstrator when in fact it was a used automobile, and because of plaintiff’s prior handling of oth■er mortgage paper affecting the mortgaged vehicle, it was charged with knowledge of ■ the infirmities in the note. The court therein held General Motors Acceptance Corporation was bound by the equities existing between the maker and'dealer as original payee. ■ General Contract Corporation is likewise chargeable with knowledge that at the time it purchased defendant’s note, title to the automobile was not registered in the name of the dealer but in fact in the name of Freeman.
In brief, counsel for defendant claims entitlement to $1,500, which sum includes $500 attorney’s fees for dissolution of the writ. The damages so claimed were not supported by any substantial evidence. Furthermore, we are of the opinion that when the motion to dissolve was referred to the merits the claim for attorney’s fees was lost since the evidence must show the value of services rendered exclusively upon the dissolution of the writ. General Finance Co. of Louisiana, Inc., v. Veith, La.App. Orleans Circuit, 1937, 177 So. 71; Hebert v. Hurwitz Mintz Furniture Co., La.App. Orleans Circuit, 1945, 21 So.2d 638. We are of the opinion, however, defendant has been wrongfully deprived of his automobile and that he. should be allowed to seek reimbursement on any claim he may have,¡ arising from the purchase of this vehicle.
It follows .from our findings that the judgment from which appealed should be reversed and the sale of the Chevrolet automobile from the Bowie County Motor Company of September 10, 1953, should be rescinded, reserving to defendant any legal rights he may have for damages. It is therefore ordered, adjudged and decreed that the judgment from which appealed be and the same is hereby annulled, avoided and set aside and plaintiff’s .suit be and the same is hereby dismissed. It is further ordered that the sale of that certain 1953 Chevrolet Tudor automobile bearing Motor .No. LAA-300987, from Bowie County Motor Company to B. A. Wigington as evidenced by an act of sale and chattel mortgage bearing date of September 10, 1953, and recorded in the chattel mortgage rec *152 ords of Webster Parish, Louisiana, be and the same is hereby annulled and set aside, reserving to B. A. Wigington any legal rights he may have for damages sustained by reason of said sale. It is further ordered that plaintiff pay all costs of this suit.