NORRIS, Judge.
Hyster Company sued its mortgagor, Joe Reeves III (doing business as Reeves Tractor Co.), for executory process on a chattel mortgage affecting a trailer and compactor. First National Bank of Bienville Parish (“FNB”) intervened, alleging a superior ■mortgage on the trailer. The trial court conducted a hearing, in effect to rank the mortgages as to the trailer. It concluded that FNB’s was superior and declared FNB the owner of the proceeds of any judicial sale to the extent of the mortgage. Hyster appeals. For the reasons expressed, we affirm.
Hyster sold Reeves Tractor (of which Joe Reeves III is the sole proprietor) a compactor and trailer in November 1984. Reeves executed two notes, totalling $84,286, and a collateral chattel mortgage that confessed judgment and was pledged to Hyster as security. Although the trailer was subject to Vehicle Certificate of Title Law, Hyster filed its mortgage not with the Department of Public Safety (“DPS”) as LSA+R.S. 32:710 B(l) requires, but in the chattel mortgage records of Bienville Parish. By affidavit, Hyster’s credit manager stated that the trailer would never be licensed so as to deprive Hyster of its lien rights. According to Hyster’s memorandum in support of the motion for summary judgment, Hyster did not require Reeves to apply for title and license because it understood that Reeves intended to sell the trailer; this could be more easily done if the trailer appeared unencumbered. Hyster “understood” that Reeves would not license the trailer so as to deprive Hyster of its lien rights. Hyster gave Reeves a Certificate of Origin that did not reflect any mortgage or lien. Reeves was a dealer but apparently was not “licensed” as defined by LSA-R. S. 32:702(2) and 47:451(8), and therefore did not qualify for “floor plan financing,” LSA-R.S. 32:702(5), which would have better suited Hyster’s and Reeves’s needs. Hyster brought the instant suit on the chattel mortgage in January 1986, alleging that Reeves had made only one payment and was $79,854 in arrears.
Meanwhile Reeves Tractor sold the trailer to Reeves Equipment Co., an inactive corporation wholly owned by Joe Reeves III. This was accomplished by an act of sale dated April 9, 1985 (roughly five months after the purchase from Hyster) stating a price of $8,000; Reeves could not recall whether this price was ever paid, and the evidence strongly shows that no actual transfer of possession was made. The evidence also shows that all of Reeves’s enterprises were actually one business; he later stated he bought the trailer “to use ourselves.” Using the “clear” Certificate of Origin it received from Joe Reeves, Reeves Equipment applied to DPS for a Certificate of Title, which also came through “clear.” Armed with this title, Reeves went to Citizens Bank and Trust (FNB’s predecessor) and applied for a loan because, as he stated later, he needed the money for his own businesses. He offered the Hyster trailer as collateral. Citizens Bank loaned Reeves $25,000 and Reeves executed a note and collateral chattel mortgage on behalf of Reeves Equipment for that amount plus *365 interest on April 23, 1985. The mortgage confessed judgment and was pledged to Citizens Bank, which recorded it with DPS in compliance with R.S. 32:710 B(l). In December 1986, the note and mortgage were assigned to Citizens Bank’s successor, FNB.
FNB intervened in Hyster’s suit in January, 1987, alleging that Reeves was $25,547 in arrears. It asserted that its properly recorded mortgage of April 1985 primed Hyster’s earlier but improperly recorded mortgage of November 1984.
Hyster filed exceptions to FNB’s intervention but these were dismissed on technical grounds. Hyster also amended its petition several times, eventually adding the claim of a vendor’s privilege. FNB moved to fix its petition for hearing and Hyster moved for summary judgment. The motions were heard simultaneously. In an oral ruling, the trial court denied Hyster’s motion for summary judgment. It granted FNB’s petition to intervene and declared the FNB mortgage superior to Hyster’s chattel mortgage and vendor’s lien. The court also named FNB owner of the proceeds of any judicial sale of the trailer to the extent of its mortgage. There was no ruling as to the compactor.
Hyster now appeals, advancing three assignments of error. By the first, it urges it has a vendor’s privilege which primes all subsequent mortgages under LSA-C.C. art. 3227. By the second two, it urges the privilege was not destroyed by the sale from Reeves Tractor to Reeves Equipment because the trailer never left the possession of Reeves Tractor or its sole proprietor, Joe Reeves III. FNB argues, in essence, that the Certificate of Title Law, R.S. 32:701 et seq., provides the exclusive method of preserving security interests in motor vehicles, that Hyster’s failure to comply with the statute made its interest vulnerable to third parties like FNB, and that Hyster is estopped from asserting its vendor’s privilege in preference to FNB’s chattel mortgage.
FNB’s position is persuasive. The Certificate of Title Law is uniformly applicable to “the sale and chattel mortgaging of vehicles of the sort and kind required to be registered and licensed * * LSA-R. S. 32:704. The law specifically requires that in order to affect third persons a chattel mortgage must be received and validated by DPS. R.S. 32:710 B(l)(b). Hyster concededly did not comply with this provision and its mortgage cannot prime another which was properly and legally registered. Universal CIT Credit Corp. v. Parker, 117 So.2d 660 (La.App. 2d Cir.1960); Gibsland Bank & Trust Co. v. Boddie, 480 So.2d 906 (La.App. 2d Cir.1985).
Hyster counters by asserting a vendor’s privilege which it claimed in addition to the chattel mortgage. Ordinarily an unrecorded vendor’s privilege primes a chattel mortgage which is later acquired and recorded in compliance with the Certificate of Title law, provided the thing sold is still in the vendee’s possession. LSA-C.C. art. 3227; Scott v. Reed, 524 So.2d 756 (La.App. 3d Cir.1988). The Certificate of Title Law does not supersede the general law of the Civil Code. Tallulah Fin. Co. v. Matthews, 116 So.2d 121 (La.App. 2d Cir.1959).
In the circumstances of this case, however, the evidence shows conduct on Hyster’s part that was totally inconsistent with reliance on the vendor’s privilege. Privilege may be waived by implication from the facts and circumstances of the particular case. Wardlaw Bros. Garage v. Thomas, 19 La.App. 241, 140 So. 108 (2d Cir.1932); Babineaux v. Grisaffi, 180 So.2d 888 (La.App. 3d Cir.1965); see also Executive Office Centers, Inc. v. Cournoyer, 433 So.2d 324 (La.App. 4th Cir.1983). We consider it most significant that Hyster argued in memorandum that it intended for Joe Reeves to resell the trailer. With this in mind, Hyster gave to Reeves all the documentation needed for Reeves to transfer a “clear” title. Judging from these acts, Hy-ster plainly intended for Reeves to sell the trailer and transfer its possession; and a sale and delivery would plainly destroy its vendor’s privilege. LSA-C.C. art. 3227. In short, Hyster expected Reeves to deal with the trailer in such a way as to defeat the vendor’s privilege. Hyster probably would *366 have encouraged a resale, believing the proceeds would be applied to its chattel mortgage. This conduct is therefore inconsistent with reliance on the protection of the vendor’s privilege. Admittedly Hyster did require a chattel mortgage, which tends to preserve the same interest as a vendor’s privilege. And yet Hyster never recorded this mortgage in the manner that would make the title reflect it. Hyster also did not note any vendor’s privilege on the Certificate of Origin. Thus despite the execution of the mortgage (which was improperly filed) Hyster’s overall conduct shows no reliance on the vendor’s privilege and an apparent intent for Reeves to deal with third parties in a way that would defeat the privilege. By its actions, Hyster waived the right to assert its vendor’s privilege.
FNB, on the other hand, acted in complete compliance with the statute and in complete reliance on the protections it affords. As noted, Civil Code privileges are not preempted by the Certificate of Title Law. Nevertheless, the purpose of the statute is to provide the public a means of properly determining the ownership and encumbrance of vehicles subject to registration and to protect innocent third parties who rely on the records. Ballard v. McBryde, 275 So.2d 464 (La.App. 2d Cir.1973); Theriac v. McKeever, 405 So.2d 354 (La.App. 2d Cir.1981). When Joe Reeves applied to Citizens Bank for a loan, he presented to bank personnel a Certificate of Title in the name of Reeves Equipment and showing no encumbrances. Citizens Bank applied for a Certificate of Registration, and DPS issued a new Certificate of Title verifying that Citizens Bank held the only encumbrance on the trailer. Citizens Bank did everything possible to protect its interest.
Furthermore, the evidence shows that Joe Reeves went to Hyster, somehow convinced it that he was buying the trailer for resale, and thus induced Hyster to give him all the documents he needed to transfer a “clear” title. However, Reeves admitted in deposition that he bought the trailer for his own private use. He later transacted a sham sale to a sister corporation for the apparent purpose of acquiring the “clear” title. He presented this title to Citizens Bank and obtained a personal loan on collateral that was already encumbered to the full extent of its value. He did not tell the bank that he still owed the purchase price. It is clear that Reeves’s conduct with both Hyster and Citizens Bank was of questionable integrity.
It is settled jurisprudence that where one of two innocent parties must suffer loss because of the conduct of another, the burden of the loss should be imposed on him who most contributed to it. Flatte v. Nichols, 233 La. 171, 96 So.2d 477 (1957), and citations therein; Ballard v. McBryde, supra; Theriac v. McKeever, supra. Reeves persuaded Hyster to record its mortgage ineffectually and to perform acts amounting to waiver of its vendor’s privilege. However, Hyster also facilitated Reeves’s next suspicious transaction. This could have been prevented if Hyster had taken what we consider the basic precaution of filing its motor vehicle chattel mortgage with DPS or noting its vendor’s privilege on the Certificate of Origin. Hyster also could have required Reeves to apply for a dealer’s license so floor plan financing would have been available; this would have suited both parties’ needs. See Citizens Bank & Trust v. Little Ford, 522 So.2d 1124 (La.App. 1st Cir.1988). Hyster took none of these precautions and, as a result, Reeves was able to obtain a loan which Citizens Bank, had it known all the facts, would not have extended. Since Citizens Bank contributed less to Reeves’s conduct, and Hyster more, Hyster should absorb the burden of the loss.
The case of Scott v. Reed, supra, relied on by Hyster in brief, is similar to the instant case but not apposite. In that case, the potential problems arising from an unpaid purchase price were disclosed to the lender’s agent. Thus the lender had actual knowledge of the seller’s interest, and the court specifically rejected any application of estoppel or detrimental reliance. 524 So.2d at 759. This is tantamount to a seller’s disclosure of title defects, and it prevents the buyer from calling the seller in warranty. LSA-C.C. art. 2501. In the *367 instant case Joe Reeves made no disclosure to Citizens Bank and the Certificate of Title he gave them was clear. Citizens Bank never knowingly assumed the risk of losing its position of superior security as did Allied Finance in Scott.
For these reasons we hold that Hyster waived its rights under the vendor’s privilege and is equitably estopped from now asserting them.
Hyster finally argues that FNB’s mortgage is invalid for lack of a corporate resolution from Reeves Equipment, as required by LSA-C.C.P. art. 2636. The remedy for failure to attach authentic evidence of the corporate resolution to a petition for executory process is to convert the proceedings to ordinary. First Guar. Bank v. Baton Rouge Petr. Center, 529 So.2d 834 (La.1988) (on rehearing). Noting that FNB never attempted to invoke executory process on its mortgage, we do not see that the failure to attach authentic proof affects its position. As for the validity of Joe Reeves’s authority to encumber corporate property, the record includes a resolution adopted by the board of Reeves Equipment in October 1981 and certified as still in effect in August 1985. This resolution granted Reeves the authority to mortgage the trailer. There is really no question of the validity of the debt and mortgage between Reeves Equipment and FNB. This argument does not present reversible error.
The judgment is affirmed at appellant’s costs.
AFFIRMED.
SEXTON, J., dissents with written reasons.